UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TYRONE M. WESLEY,

      **Plaintiff,**

      v.                            Case No. 25-C-503

NICOLAS FILKINS, et al.,

      **Defendants.**

---

## SCREENING ORDER

---

      Plaintiff Tyrone M. Wesley, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that Defendants violated his Fourteenth Amendment rights at the Racine Correctional Institution by placing him in disciplinary segregation for 159 days without adequate due process. Dkt. No. 1. On July 2, 2025, the Court screened and dismissed the original complaint for failure to state a claim upon which relief could be granted. Dkt. No. 8. The Court explained that Plaintiff failed to trigger a "liberty" interest under the Fourteenth Amendment because he did not explain what conditions of confinement he endured that constituted an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 5. Plaintiff also did not explain *how* his due process rights were violated. *Id*. The Court noted that a violation of a prison policy regarding "adequate notice" did not necessarily mean that there was a federal constitutional violation, and to state a claim, Plaintiff had to explain what specifically happened that he believed was unfair and violated due process. *Id*. The Court gave Plaintiff an opportunity to file an amended complaint by August 1, 2025, to attempt to state a claim. *Id*. at 6. On July 31, 2025, Plaintiff filed an amended complaint. Dkt. No. 9. This order screens the amended complaint.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff is an inmate at the Racine Correctional Institution. Dkt. No. 9. Defendants are Lieutenant Travis Stine, Unit Manager Nicolas Filkins, Security Director Brandon Morris, Deputy Warden Kenya Mason, and Warden Robert Miller. *Id*. at 1.

On October 6, 2024, correctional staff found a cellphone in the common area of Plaintiff's cell. *Id*. at 5. Plaintiff was immediately taken to Temporary Lock-Up (TLU) but his cellmate was not. *Id*. About 12 days later, on October 18, 2024, Lt. Stein called Plaintiff into his office for a "hearing" on the conduct report that was issued as a result of the cellphone. *Id*. at 2, 5. Plaintiff started to explain his side of the story, but Lt. Stein stopped him and stated that he still had to finish investigating the allegations. *Id*. Lt. Stein stated he would bring Plaintiff back to his office another day to restart the hearing. *Id*.

On October 28, 2024, Lt. Stein called Plaintiff back into his office to restart the hearing. *Id*. Plaintiff stated that the conduct report should be dismissed because he had been in TLU for 22 days without a hearing (one day longer than what was allowed under prison policy). *Id*. at 2. Lt. Stein indicated that he knew that 21 days had passed without an extension request but he would hold the hearing anyway. *Id*. at 2, 5. Plaintiff states that he was never allowed to finish giving his statement at the October 28 hearing. *Id*. at 2. Plaintiff was found guilty and was moved to disciplinary segregation to serve his sentence. *See id*.

Later that day, on October 28, 2024, Plaintiff wrote to Security Director Morris and Deputy Warden Mason explaining that he was kept in TLU for more than 21 days without a hearing, in violation of prison policy. *Id*. at 3. Security Director Morris responded that the conduct report was issued on October 12, 2024, so the TLU time started on that date. *Id.* Using that calculation date, only 17 days had passed, so there was no violation. *Id*. Plaintiff appealed Lt. Stein's decision, and Deputy Warden Mason affirmed it. *Id*. at 3-4.

Plaintiff subsequently filed an inmate complaint about due process violations during his conduct report hearing. *Id*. at 3. He prevailed on his argument, and the conduct report was dismissed on March 18, 2025. *Id*. Plaintiff states that, when his conduct report was dismissed, he was not moved back to general population. *Id*. Instead, Warden Miller, Deputy Warden Mason, Security Director Morris, and Unit Manager Nicolas Filkins placed him in "a newly created unit" called "P4 status," where inmates have to remain for 60 to 90 days after completing their segregation sentence. *Id*. at 2, 6. In P4 status, there is modified dayroom/courtyard time, no track, no recreation room, and limited library time. *Id*. Plaintiff states that 85% of the individuals on the unit are drug users and violent, making it an unpleasant place to be. *Id*. at 2. He asserts that he was on P4 status from March 18, 2025, until at least July 26, 2025. *Id*. at 6. For relief, Plaintiff seeks monetary damages. *Id*. at 7.

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

To state a Fourteenth Amendment due process claim, Plaintiff must allege that (1) he was deprived of a constitutionally protected liberty interest and (2) the procedures he was afforded were constitutionally deficient. *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). Disciplinary segregation deprives an inmate of his liberty interest when it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 964-65 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Court looks at the "combined import" of the duration of the confinement *and* the conditions endured. *Id*. (citing *Hardaway v. Meyerhoff*, 734

3

F.3d 740, 743 (7th Cir. 2013)). Absent harsh conditions of confinement, disciplinary segregation for a period of time of less than six months does not typically trigger a liberty interest. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (noting "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights").

Once a liberty interest has been invoked, the Court looks to what process was due. *Ealy*, 109 F.4th at 965-66. An inmate who is facing transfer to disciplinary segregation is only entitled to "informal, nonadversarial due process," which leaves substantial discretion and flexibility in the hands of the prison administrators. *Id.* (citing *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)). Informal due process requires only that an inmate be provided (1) "notice of the reasons for the inmate's placement" in confinement and (2) "an opportunity to present his views," for instance, in a written statement or at a hearing. *Id.* "[T]he Supreme Court has made clear that '[o]rdinarily a written statement by the inmate will accomplish this purpose. . . . So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.'" *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

In the original complaint, Plaintiff raised issue with the 159 days he served in disciplinary segregation without adequate due process. Dkt. No. 1. The Court directed him to provide information about what conditions of confinement he endured in disciplinary segregation that showed that he suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Dkt. No. 8. In the amended complaint, Plaintiff appears to have abandoned his claim involving his time in disciplinary segregation, and he does not provide any information about what conditions of confinement he endured there. Instead, he now complains about his time on "P4 status" between March 2025 and July 2025, after he left disciplinary segregation. But it is clear from the allegations in the amended complaint that P4 status provides *more* privileges than disciplinary segregation. Indeed, the conditions Plaintiff complains about on

4

P4 status—modified dayroom/courtyard time, no track, no recreation room, limited library time, and housing with other inmates who have violated prison rules—come nowhere close to the conditions required to trigger a liberty interest. *See Marion*, 559 F.3d at 697 (noting that examples of "harsh conditions" include transfer to a maximum-security prison for an indefinite period of time, denial of virtually all sensory and/or environmental stimuli, little human contact, disqualification from parole eligibility); *see also Jackson v. Anastasio*, No. 23-1703, 2025 WL 2437947, at *7 (7th Cir. Aug. 25, 2025) (noting that "feces and urine on the walls," "contaminated water," and "roaches and mice" were the type of circumstances required to constitute harsh conditions). The conditions Plaintiff complains of are consistent with the conditions of other inmates who have violated prison rules. Additionally, the Seventh Circuit has held that there is no due process claim where a prisoner's transfer to a special housing unit left the prisoner "better off." *See Furrow v. Marberry*, 412 F. App'x 880, 883 (7th Cir. 2011).

Finally, it is well established that placement of an inmate in non-punitive administrative segregation does not give rise to a liberty interest. *See Lekas v. Briley*, 405 F.3d 602, 609 (7th Cir. 2005); *see also Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (noting that "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes"). Plaintiff's description of P4 status—a unit that an inmate must be on for 60 to 90 days after completing their segregation sentence—is consistent with non-punitive administrative segregation intended to assist inmates in the transfer back to general population. Therefore, Plaintiff's amended complaint has not alleged facts showing that he was deprived of a liberty interest, and the Court will dismiss the case for failure to state a claim.

5

Case 2:25-cv-00503-WCG   Filed 09/17/25   Page 5 of 6   Document 10

## CONCLUSION

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Green Bay, Wisconsin this 17th day of September, 2025.

William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.